

Embassy of the United States of America

## Certificate to be Attached to Documentary Evidence Accompanying Requisitions in the United States for Extradition

### AMERICAN FOREIGN SERVICE

Ottawa, Canada, October 7, 2008

David T. Hopper, Consul General of the United States of America
at Ottawa, Canada, hereby certify that the annexed papers, being
supporting documents proposed to be used upon an application for the
extradition from the United States of Mary Beth Harshbarger, who is
wanted to stand trial on one count of criminal negligence causing death
and one count of carelessly using a firearm or ammunition, contrary to
the Criminal Code of Canada, alleged to have been committed in the
Province of Newfoundland and Labrador, are properly and legally
authenticated so as to entitle them to be received in evidence for
similar purposes by the tribunals of Canada, as required by Title 18,
United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of
office to be affixed this 7th day of October 2008.

_____
David T. Hopper
Consul General of the
United States of America

Form Foreign Service



Department of Justice          Ministère de la Justice
Canada                        Canada

Ottawa, Canada
K1A 0H8

## CERTIFICATE OF AUTHENTICATION

IN THE MATTER OF the extradition of **Mary Beth HARSHBARGER** from
the United States of America to Newfoundland and Labrador, Canada on
one count of criminal negligence causing death and one count of
carelessly using a firearm or ammunition

I, Cathy Chalifour, Acting Senior Counsel, International Assistance Group, Department of
Justice of Canada, do hereby certify:

THAT attached to this Certificate is authenticated documentation presented by Canada in
support of the extradition of **Mary Beth HARSHBARGER** who stands charged in the
Province of Newfoundland and Labrador with one count of criminal negligence causing
death and one count of carelessly using a firearm or ammunition all contrary to the
*Criminal Code.*

THAT the documentation attached to this certificate is composed of:

- the original Affidavit of law of STEPHEN R. DAWSON, Crown Counsel, Ministry of
  the Attorney General for the Province of Newfoundland and Labrador; to which is
  attached:

  - as exhibit "SD-1", a certified true copy of the Information;

  - as exhibit "SD-2", a certified true copy of the Warrant for Arrest.

- the original Affidavit of Constable DOUGLAS HEWITT, Royal Canadian Mounted
  Police Officer, Grand Falls-Windsor Detachment, Province of Newfoundland and
  Labrador; and

- the original Affidavit of LAMBERT GREENE, witness.

Canadä

- 2 -

THAT Patricia Doyle whose original signature appears at the end of the Affidavit of STEPHEN R. DAWSON, is a Commissioner of Oaths, in and for the Province of Newfoundland and Labrador, having been duly commissioned and duly authorized by the laws thereof to administer oaths and to take affidavits within the said Province.

THAT Jocelyn C. Greenwood whose original signature appears at the end of the Affidavit of DOUGLAS HEWITT, is a Commissioner of Oaths, in and for the Province of Newfoundland and Labrador, having been duly commissioned and duly authorized by the laws thereof to administer oaths and to take affidavits within the said Province.

THAT Carol Reidpath whose original signature appears at the end of the Affidavit of LAMBERT GREENE, is a Commissioner of Oaths, in and for the Province of Newfoundland and Labrador, having been duly commissioned and duly authorized by the laws thereof to administer oaths and to take affidavits within the said Province.

THAT Donna Antle who certified the copies of the Information and Warrant for Arrest, is a clerk and a Justice of the Peace of the Provincial Court of Justice, in and for the Province of Newfoundland and Labrador, having been duly appointed to that office, and as such is empowered to certify such documents of the said court.

The Seal of the Minister of Justice of Canada is hereby affixed this 6th day of October, 2008.

_____
Cathy Chalifour

**CANADA**

**PROVINCE OF NEWFOUNDLAND
AND LABRADOR**

**IN THE MATTER OF** the Extradition
from the United States of America
to Canada of Mary Beth Harshbarger
who stands charged in Canada with
Criminal Negligence Causing Death and
Careless Use of a Firearm

## AFFIDAVIT OF STEPHEN R. DAWSON

Department of Justice
Province of Newfoundland and Labrador
4th Floor, Atlantic Place
215 Water Street
St. John's, NL  A1B 4J6

Ph:  709-729-6885
Fax:  709-729-1135
Email:  stevedawson@gov.nl.ca

**CANADA**                                **HER MAJESTY THE QUEEN**

**v.**

**PROVINCE OF NEWFOUNDLAND
AND LABRADOR**                    **MARY BETH HARSHBARGER**


**IN THE MATTER OF
a Request by Canada for the
Surrender of Mary Beth Harshbarger**

---

**AFFIDAVIT OF STEPHEN R. DAWSON**

---

I, Stephen R. Dawson, of St. John's, in the Province of Newfoundland and Labrador, Canada, a lawyer for the Department of Justice for the Province of Newfoundland and Labrador, Canada, MAKE OATH AND SAY AS FOLLOWS:

**A.    Qualifications**

1.    I am a citizen of Canada.  I reside in the City of St. John's, in the Province of Newfoundland and Labrador, Canada.  In April, 1991 I was admitted to the Bar of the Province of Newfoundland and Labrador and was enrolled as a solicitor of the Supreme Court of Newfoundland and Labrador.  From 1991 until the present I have been, and continue to be, entitled to practice law in the



Province of Newfoundland and Labrador. From 1991 until the present, I have practiced law, and continue to practice law, in the employment of the Department of Justice for the province of Newfoundland and Labrador. I currently occupy the position of Senior Crown Attorney (Acting) at the Special Prosecutions Office.

2.    The Special Prosecutions Office is a branch of the Public Prosecutions Division of the Department of Justice. The Special Prosecutions Office maintains the carriage of all appeals in relation to serious criminal matters arising in the Province of Newfoundland and Labrador, before the Court of Appeal (the highest court in the province) and the Supreme Court of Canada (the country's highest court). Counsel in the Special Prosecutions Office also conduct prosecutions which involve complex or sensitive criminal matters, such as sophisticated frauds, offences involving public corruption, organized crime and serious offences relating to the administration of justice. The mandate of the Special Prosecutions Office also includes the preparation of materials in support of applications for the extradition from foreign jurisdictions of persons who have been charged with the commission of criminal offences in the Province of Newfoundland and Labrador.

3.    I have practiced law as a Crown attorney since 1991, and I have been at the Special Prosecutions Office since 2001. I have occupied the position of Acting Senior Crown Attorney since 2006. As a result of my training, my   employment and my experience, I am knowledgeable about criminal procedure and jurisprudence arising from both the *Criminal Code of Canada*   and the   common law in Canada.

B.     **Statement of Particulars**

i)     **Warrant of Arrest**

4.     Under Canadian law, a person is formally charged with a crime when an Information is sworn before a justice (i.e. a judge of the Provincial Court of Newfoundland and Labrador or a Justice of the Peace). The charge is formally instituted when an informant, usually a peace officer, swears under oath that he or she has reasonable and probable grounds to believe that an accused has committed the offence(s) detailed in the Information.

5.     In the present case, Constable Douglas Hewitt of the Royal Canadian Mounted Police, Grand Falls-Windsor Detachment, swore an Information naming Mary Beth Harshbarger before Justice of the Peace, Donna Antle, on April 30, 2008. I annex as Exhibit SD-1 to my Affidavit a true certified copy of the Information.

6.     On April 30, 2008, Justice of the Peace Pamela Arnold, issued a warrant for the arrest of Mary Beth Harshbarger, holding that there were reasonable and probable grounds to believe it was necessary in the public interest to do so. I annex as Exhibit SD-2 to my Affidavit a true certified copy of the Warrant of Arrest. The Warrant of Arrest lists the offences of which Mary Beth Harshbarger is charged and accused:

(i)     Criminal Negligence causing death; and

(ii)     Carelessly using a Firearm or Ammunition.



Page 5

7. The Warrant of Arrest issued on April 30, 2008 by Justice of the Peace Pamela Arnold, is a judicial document authorizing the arrest of Mary Beth Harshbarger who is wanted for prosecution in respect of the offences named therein. This warrant continues in force and is presently outstanding in respect of the charges contained therein.

8. Pursuant to the *Criminal Code of Canada*, Justice of the Peace Arnold is a judicial officer and competent authority with jurisdiction to issue Warrants of Arrest for persons accused of criminal offences under the Criminal Code of Canada. Criminal proceedings against Mary Beth Harshbarger have therefore been commenced by the swearing of the Information and issuance of the Warrant of Arrest.

9. The original Information and Warrant must remain in Canada for the purposes of criminal proceedings. The copies annexed as Exhibits SD-1 and SD-2 were certified as true copies by Donna Antle on August 12 , 2008. Donna Antle is a clerk of the Provincial Court of Newfoundland and Labrador at Grand Falls-Windsor and a judicial official duly authorized to certify copies of original Informations and Warrants of Arrest.

ii)   **The Material Facts**

10. The material facts of this case are contained in the accompanying affidavits, and are briefly summarized in the following paragraphs.

11.   On September 14, 2006, on a remote woods road near the town of Buchans
      Junction, Newfoundland and Labrador, Mary Beth Harshbarger shot and killed
      her husband, Mark Harshbarger. The Harshbargers were on a week long
      hunting trip to Newfoundland and Labrador, and had been hunting for moose,
      caribou and black bear for six days.

12.   Prior to the shooting, Mark Harshbarger and Guide Lambert Greene, had
      left to walk in the bush searching for moose. Mary Beth Harshbarger remained
      in the truck with the couple's two children, aged 4 years and 6 months. Mark
      Harshbarger and Lambert Greene were walking back to the truck and were
      approximately 200 feet away from it when Mark Harshbarger was shot. Mary
      Beth Harshbarger was standing in the back of the pick-up truck when she fired
      the shot that killed her husband.

13.   According to guide Lambert Greene, he and Mark Harshbarger were heading
      back to the truck because it was becoming dark. According to the best
      estimates of police, as a result of their investigation, the shooting took place at
      approximately 7:55 p.m. According to the National Research Council historical
      weather data sunset would have been at 7:31 p.m. in that area on September 14,
      2006.

14.   During the course of the investigation, with the help of Lambert Greene,
      police re-enacted the scene by having police officers placed in the same
      spot occupied by Mary Beth Harshbarger at the time of the shooting, and an
      officer following the route taken by Mark Harshbarger. Re-enactments
      were done on September 16, 2006 and September 13, 2007. On both



occasions police officers were of the opinion that it was too dark to hunt safely at 7:55 p.m.

15. Mary Beth Harshbarger stated that she thought she was shooting at a black bear when she shot Mark Harshbarger.  Examination of the scene by police officers did not disclose any evidence of prints of a bear or any other large animal.  However, the footprints of Mark Harshbarger were clearly visible in the marshy ground.

## C. **Criminal Code Provisions**

16. The *Criminal Code of Canada*, Revised Statutes of Canada, 1985, Chapter C-46, as amended, is a statute duly enacted by the Parliament of Canada containing the law relating to criminal offences and criminal procedure for the whole of Canada and every province thereof, including the Provinceof Newfoundland and Labrador.  The *Criminal Code of Canada* was in force at the time of the commission of the alleged offences, and continues to be in force at present.

17. Mary Beth Harshbarger stands charged with the offences of criminal negligence causing death and careless use of a firearm, as specified in the Warrant of Arrest.  The *Criminal Code of Canada* contained several provisions which codify these offices.  Those provisions as they existed at the time of the alleged offences, duly enacted and proclaimed into force, and as would be applicable in the event of a trial in the within case, are set out in the following paragraphs:

Page 8

### a) Definition of Criminal Negligence

Criminal negligence is defined under section 219 of the Criminal Code of Canada as follows:

> 219.(1) Criminal negligence – Every one is criminally
> negligent who
> (a) in doing anything, or
> (b) in omitting to do anything that it is his duty
> to do, shows wanton or reckless disregard for
> the lives or safety of others.

### b) Punishment for Criminal Negligence Causing Death

Section 220 of the *Criminal Code of Canada* provides as follows:

> 220. Causing death by criminal negligence – Every
> person who by criminal negligence causes death to
> another person is guilty of an indictable offence and
> liable
> > (a) where a firearm is used in the commission
> > of the offence, to imprisonment for life and to
> > a minimum punishment of imprisonment for a
> > term of four years; and
> > (b) in any other case, to imprisonment for life.

### c) Careless Use of a Firearm

Careless use of a firearm is defined at section 86(1) of the *Criminal Code of Canada,* as follows:

> 86.(1) Careless use of firearm, etc.—Every person
> commits an offence who, without lawful excuse,
> uses, carries, handles, ships, transports or stores
> a firearm, a prohibited weapon, a restricted weapon,
> a prohibited device or any ammunition or prohibited
> ammunition in a careless manner or without
> reasonable precautions for the safety of other
> persons.



### d) Applicable Punishment for Careless Use of a Firearm

Section 86(3)(a) provides as follows:

> *(3) Punishment – Every person who commits an*
> *Offence under subsection(1) or (2)*
>
> *(a) is guilty of an indictable offence and*
> *liable to imprisonment*
> > *i) in the case of a first offence, for a term*
> > *not exceeding two years, and*
> > *ii) in the case of a second or subsequent*
> > *offence, for a term not exceeding five years;*

## D.   No Limitation Period

18.   The offences alleged in this case, Criminal Negligence causing Death, contrary to section 220(a) and Careless Use of a Firearm, contrary to section 86(3)(a) of the *Criminal Code of Canada* are both indictable offences. In Canada there is no statutory enactment which prescribes the time within which a prosecution must be instituted for these offences. Therefore, there is no time limit on the institution of proceedings for the offences of which Mary Beth Harshbarger is accused and charged with.

## E.   Description of Accused

19.   Mary Beth Harshbarger is a female born on February 19, 1965. She is an American citizen. She stands 160 centimeters tall, weights 65 kilograms, and has green eyes. A photograph depicting Mary Beth Harshbarger is attached as Exhibit "A" to the Affidavit of Lambert Greene.



### F.  Original Affidavit

20.  The affidavits of the following persons accompany my affidavit:

> Cst. Douglas Hewitt
>
> Lambert Greene

### G.  Original Exhibits

21.  The original exhibits in this matter must remain in Canada for use in criminal proceedings.

### H.  Sufficiency of Evidence

22.  I am satisfied, based on the facts as set out in the accompanying \affidavits and exhibits attached thereto, that the evidence in this case establishes a *prima facie* case of the offences of criminal negligence causing death and careless use of a firearm.

23.  I make this affidavit in support of an application for an Order for the Extradition of Mary Beth Harshbarger from the United States of American to Canada on the counts of criminal negligence causing death and careless use of a firearm, mentioned in the Information referred to in paragraph 5 herein.

**SWORN BEFORE ME** at
St. John's, Newfoundland
and Labrador, Canada,
this *15th* day of August,
2008.

_____
PATRICIA DOYLE
A Commissioner for Oaths in and for
the Province of Newfoundland and Labrador.
My commission expires December 31, 2010

_____
**STEPHEN R. DAWSON**



# EXHIBIT SD-1

# INFORMATION

STATUTES
RIMINEL, LOIS FEDERALES
VINCIALES

ADA

## Information

vince of Newfoundland and Labrador

FOR AND ON BEHALF OF HER MAJESTY THE QUEEN

This is the information of    **Cst. Doug HEWITT**

                                            (name)

a member of    **Royal Canadian Mounted Police**

                                            (address)

                    **Peace Officer**

hereinafter called the informant.               (occupation)

The informant says that he/she has reason to believe and does believe that

**MARY BETH HARSHBARGER**

     (full name of accused in capital letters)

| **1965-02-19** | **Female** |
| --- | --- |
| (date of birth - YYYY/MM/DD) | (gender) |

of   **RR3, Box 331, Meshoppen, Pennsylvania,**

            (complete address)

     **United States of America**

                      Ph: (    )     -

## Dénonciation

CANADA

Province de Terre-Neuve et Labrador

Les présentes constituent la dénonciation

de _____

                       (nom)

de _____

                       (adresse)

                       (occupation)

ci-après appelé le dénonciateur/la dénonciatrice.

Le dénonciateur/la dénonciatrice déclare qu'il/qu'elle a des raisons de croire et croit que

_____

(nom complet de l'accusé en lettre moulée)

| _____ | _____ |
| --- | --- |
| (date de naissance - AAAA/MM/JJ) | (gender) |

_____

(adresse complète)

_____

                      Télé (    )     -

---

### Count 1

*Where possible include both Definition and Penalty Sections for each count/*

On or about the 14th day of September A.D., 2006, at or near Buchans Junction in the Province of Newfoundland and Labrador did by criminal negligence cause the death of Mark Brian HARSHBARGER contrary to Section 220(a) of the Criminal Code of Canada.

**AND FURTHER THAT**

### Count 2

*si possible, fournir le définition ainsi que la clause pénale de chaque accusation*

On or about the 14th day of September A.D., 2006 at or near Buchans Junction in the Province of Newfoundland and Labrador did, without lawful excuse, use a firearm, to wit, a Remington Rifle without reasonable precaution for the safety of other persons contrary to Section 86(1) of the Criminal Code of Canada, punishable by Section 86(3)(a) of the Criminal Code of Canada.

---

| Sworn before me this _____ 30th    day of | Confirmed/Confirmée |
| --- | --- |
| Assermenté devant moi ce _____    jour de | |

April              A.D.
                   en l'an de grâce   2008

et/à   **Grand Falls-Windsor, NL**

                         ☐ Summons/Assignation
                         ☐ Appearance Notice/Citation à Comparaître
Informant/Dénonciateur ou Dénonciatrice       ☐ Promise to Appear/Promesse de Comparaître
                         ☐ Recognizance/Engagement

A Justice of the Peace for Newfoundland and Labrador
Juge de paix pour Terre-Neuve et Labrador

| A Justice of the Peace for Newfoundland and Labrador | YYYY/MM/DD |
| --- | --- |
| Juge de paix pour Terre-Neuve et Labrador | AAAA/MM/JJ |

Form/Formule 2
Part 1

Court File Number
Dossier de la Cour   **I008A-0048**

**ORIGINAL**

Form 2.1 Available for the Following Counts

**CERTIFICATE**

I HEREBY CERTIFY THIS RECORD
TO BE A TRUE AND CORRECT COPY
FROM THE PROVINCIAL COURT,
GRAND FALLS/WINDSOR, NFLD.

CLERK OF THE COURT
COURT ADMINISTRATOR

Accused Name: _____    Additional Accused on Separate Form: ☐ Yes  ☐ No

## ELECTIONS

☐ Summary Conviction (Offence(s))    Crown Elects to Proceed:    ☐ Summarily

☐ Absolute Jurisdiction    ☐ By Indictment

_____
Judge

_____
YYYY/MM/DD

Accused Elects Trial by:    ☐ Judge Alone    ☑ Provincial Court Judge

☐ Judge and Jury

_____
Judge

_____
YYYY/MM/DD

Accused Re-elects Trial by:    ☐ Judge Alone    ☐ Provincial Court Judge

☐ Judge and Jury

_____
Judge

_____
YYYY/MM/DD

## FIRST APPEARANCE

*K. O'Reilly*
(Prosecutor)

*JP, NK*
(Defence)

*RGW*
(Judge or J.P.)

*RGW*    *08/4/30*
(Court Location)   (YYYY/MM/DD) Date of Appearance

☐ Released on:    ☐ Undertaking    ☑ Recognizance

☐ Previously Released

☐ Remanded for:    ☐ Show Case Hearing

☐ By Consent for: _____

## JUDICIAL INTERIM RELEASE HEARING

_____
(Prosecutor)

_____
(Defence)

_____
(Judge or J.P.)

_____
(Court Location)   (YYYY/MM/DD) Date of Appearance

Publication Ban S.517 CCC:    ☐ Ordered    ☐ Denied _____

☐ Released on Conditions In:    ☐ Undertaking    ☐ Recognizance

☐ Remand

☐ JIR Denied (Remanded in Custody Until Dealt With According to Law)

## PRELIMINARY INQUIRY

_____
(Prosecutor)

_____
(Defence)

_____
(Judge or J.P.)

_____
(Court Location)   (YYYY/MM/DD) Date of Appearance

Publication Ban S.539 CCC:    ☐ Ordered    ☐ Denied _____

Taking of Evidence:    Accused:

☐ Waived by Consent    ☐ Ordered to Stand Trial    ☐ Discharged

☐ Completed    ☐ Ordered to Stand Trial on Lesser Charge

## TRIAL

_____
(Prosecutor)

_____
(Defence)

_____
(Judge or J.P.)

_____
(Court Location)   (YYYY/MM/DD) Date of Appearance

Publication Ban S.486 CCC:    ☐ Ordered    ☐ Denied _____

| Pleas: | Count 1 | Count 2 | Count 3 |
|---|---|---|---|
| Guilty | ☐ | ☐ | ☐ |
| Not Guilty | ☐ | ☐ | ☐ |
| Other | ☐ | ☐ | ☐ |

Remarks:

*08/4/30   Warrant of Arrest pursuant to S512 (1) C. Code   RGW*

**CERTIFICATE**

I HEREBY CERTIFY THIS RECORD
TO BE A TRUE AND CORRECT COPY
FROM THE PROVINCIAL COURT,
GRAND FALLS/WINDSOR, NFLD.

CLERK OF THE COURT
COURT ADMINISTRATOR

# EXHIBIT SD-2


# WARRANT OF ARREST

**CERTIFICATE**

I HEREBY CERTIFY THIS RECORD
TO BE A TRUE AND CORRECT COPY
FROM THE PROVINCIAL COURT,
GRAND FALLS/WINDSOR, NFLD,

CLERK OF THE COURT
COURT ADMINISTRATOR

ISSUED 2008/04/30

FEDERAL AND PROVINCIAL
(   7)

CODE, CRIMINEL
LOIS FEDERALES ET PROVINCIALS (Formule 7)

CIAL COURT

COUR PROVINCIAL

### Warrant of Arrest

### Mandat d'arrestation

CANADA
Province of Newfoundland and Labrador

CANADA
Province de Terre-Neuve et de Labrador

(Sections 475, 493, 597, 800, and 803)

TO: The Peace Officers in the Province of Newfoundland.
This Warrant is issued for the arrest of

Aux agents de la paix de la Province de Terre-Neuve.
Le Present mandat est décerné pour l'arrestation de

MARY BETH HARSHBARGER (1965/02/19)
(full name / DOB(yyyy/mm/dd))

_____
(nom)                    DOB(aaaa/mm/jj)

RR#3, BOX 331, UNKNOWN, US  (Mesheppen, Pennsylvania)
(address)

_____
(addresse)

hereinafter called the accused.

ci-appelé le prévenu.

_____
Phone

_____
Phone

WHEREAS the accused has been charged with (State Offences as in Information)

ATTENDU que le prévenu a été inculpé d'avoir indiqué l'infraction comme dans la dénonciation)

| SI Number | Cnt | Police File No | Investigating Officer | Offence Date | Charge | Description |
|---|---|---|---|---|---|---|
| 1008A00148 | 1 | | CST. DOUG HEWITT | 2006/09/14 | CCC 1985 [220----] | Criminal negligence causing death |
| | 2 | | CST. DOUG HEWITT | 2006/09/14 | CCC 1998 [86-1---] | Carelessly using firearm or ammunition |
| | | | | | CCC 1998 [86-3-a-i-] | Carelessly using firearm or ammunition (first offence) |

And whereas. *

1. there are reasonable and probable grounds to believe that it is necessary in the public interest to issue this Warrant for the arrest of the accused (507(4); 512(1));

2. the accused failed to attend Court in accordance with the Summons served upon him (512(2));

3. ***an (Appearance Notice or Promise to Appear or a Recognizance entered into before an officer in charge) was confirmed and the accused failed to attend Court in accordance therewith (512(2));

4. it appears that a Summons cannot be served because the accused is evading service (512(2));

5. the accused was ordered to be present at the hearing of an application for a review of an order made by a justice and did not attend the hearing (520(5), (521(5));

6. ***there are reasonable and probable grounds to believe that the accused has violated or is about to violate the (Promise to Appear or Undertaking or Recognizance) upon which he was released (524(1) 525(5); 679(6));

7. ***there are reasonable and probable grounds to believe that the accused has since his/her release from custody on a (Promise to Appear or Undertaking or Recognizance) committed an indictable offence (524(1);525(5); 679(6));

8. ***the accused was required by an (Appearance Notice or Promise to Appear or a Recognizance entered into before an officer in charge or a Summons) to attend at the time and place stated therein for the purpose of The Identification of Criminals Act and did not appear at that time and place (502; 510);

9. ***an indictment has been found against the accused and the accused has not appeared or remained in attendance before the court for his trial (597)

10. **

Et attendu: *

1. qu'il y a des motif raisonnables et probables de croire qu'il est nécessaire dans l'inérêt public de décerner le présent mandat pour l'arrestation du prévenu (507(4); 512(1));

2. que le prévenu a omis d'être présent au tribunal en conformité de la sommation qui lui a été signifiée (512(2));

3. ***qu'un(e) (citation à comparaître ou promesse de comparaître ou engagement contracté devant un fonctionnaire responsable) a été confimé(e) et que le prévenu a omis d'Ltre présent au tridunal en confirmité du dit document (512(2));

4. qu'il parait qu'une sommation ne peut Ltre signifiée du fait que le prévenu se soustrait B signification (512(2));

5. qu'il a été ordonné au présent à l'audition d'une demande de révision d'une ordonnance rendu par un juge de paix et que le prévenu n'était pas présent à l'audition(520(5); 521(5));

6. ***qu'il y a des motifs raisonnables et probables de croire que le prévenu a violé ou est sur le point de violer (la promesse de comparaître ou la promesse ou l'engagement) en raison duquel (de laquelle il a été mis en liberté (524(1);525(5): 679(6)),

7. ***qu'il y a des motifs raisonnables et probables de croire que, depuis sa mise en liberté sur promesse de comparaître ou promesse ou engagement) le prévenu a commi un acte criminel (525(1); 525(5); 679(6));

8. ***(qu'une citation à comparaître ou une promesse de comparaître ou un engagement contracté devant un fonctionnaire responsable ou une sommation) exigeait que le prévenu soit présent aux temps et lieu y indiqués aux fins de la loi sur l'identification des criminels et que le prévenu n'a pas comparu aux temps et lieu ainsi indiqus (502; 510);

9. ***qu'une mise en accusation a été prononcée contre le prévenu et que le prévenu n'a pas comparu ou n'est pas demeuré présent devant le tribunal pour son procès.

10. **

CERTIFICATE

I HEREBY CERTIFY THE RECORD
TO BE A TRUE AND CORRECT COPY
FROM THE PROVINCIAL COURT
GRAND FALLS-WINDSOR, NFLD.

CLERK OF THE COURT/
COURT ADMINISTRATOR

THIS *IS* THEREFORE, to command you, in Her Majesty's name, forthwith to arrest the said accused and to bring him/her before a Judge of the said Province or before me or any Justice in and for the said Province, to answer to the said charge and to be dealt with according to law at Provincial Court at GRAND FALLS/WINDSOR

A ces causes, les présentes ont pour objet de vous enjoindre, au nom de Sa Majesté, d'arrLter immidatement ledit prévenu et de l'amener devant un juge de paix dans et pour ladite Province, pour répondre de ladite inculpation et pour qu'il soit traité inculpation et pour qu'il soit traité selon la loi à Cour Provincial _____ , à

DATED AT GRAND FALLS/WINDSOR this 30th day of April , A.D. 2008 .

Signé le _____ jour de _____ en l'an de grâce _____ .

_____
Justice of the Peace for Newfoundland

_____
Greffier de la cour, juge de paix ou juge

* (Initial applicable recital).
** (For any case not covered by recitals 1 to 8, insert recital in the words of the statute authorizing the warrant).
*** (Delete whichever are inapplicable).

* (Parapher l'attendu qui s'applique).
** (Pour tout cas couvert par les attendus 1 à 8, insérer un attendu reproduisant les termes de la loi autorise le mandat).
*** (Retrancher celles des mentions precedents qui ne s'appliquent pas).

CERTIFICATE

I HEREBY CERTIFY [illegible] RECORD
TO BE A TRUE [illegible] COPY
FROM THE [illegible] COURT,
GRAND FALLS [illegible], NFLD.

CLERK OF THE COURT
COURT ADMINISTRATOR

Warrant for Arrest Cont'd

ORSEMENT OF WARRANT (form 29) Within Jurisdiction

DA

ace of Newfoundland and Labrador

hereas this Warrant is issued in respect of an offence mentioned in Sections 507, 508, or 512 of the Criminal Code in respect of an offence other than an offence mentioned in section 522 of the Criminal Code, I hereby authorize the release of the accused, pursuant to Section 499 of that Act

DATED AT _____ this _____ day of _____ , A.D. _____ .

_____

Justice of the Peace

## (b) ARREST OUT OF JURISDICTION AFFIDAVIT OF PEACE OFFICES

CANADA
Province of _____ .

I _____ of _____
hereby make oath and say that I am a member of _____ ,
stationed at _____ in the Province of
Newfoundland; THAT I know _____ whose signature
appears on the within Warrant and confirm that is is his/her signature and THAT I hereby make application for authorization to
execute the within Warrant.

SWORN this _____ day of _____ , A.D. _____ at _____ in the
Province of _____ before me.

_____

(Signature and official title)

## (c) ENDORSEMENT BY JUSTICE IN ANOTHER JURISDICTION

CANADA
Province of _____ .

Pursuant to application made this day to me, I hereby authorize the execution of this Warrant within the
said _____ .

DATED AT _____ this _____ day of _____ , A.D. _____ .

_____

(Signature and official title)

**CERTIFICATE**

I HEREBY CERTIFY THIS RECORD
TO BE A TRUE AND CORRECT COPY
FROM THE PROVINCIAL COURT,
GRAND FALLS/WINDSOR, NFLD.

CLERK OF THE COURT
COURT ADMINISTRATOR

# "Affidavit of Cst. Doug Hewitt"

I, Cst. Doug Hewitt, of Grand Falls-Windsor, Newfoundland and Labrador make oath and say as follows,

1. That I have been a police officer and a member of the Royal Canadian Mounted Police since 2000.

2. That I am presently stationed at the Grand Falls-Windsor Detachment working with the General Investigation Section.

3. That I am the primary investigator in the death of Mark Brian HARSHBARGER and have reviewed the file in it's entirety.

4. That on September 14, 2006, Grand Falls-Windsor RCMPolice received a call that a hunter had fatally shot her husband while hunting. Upon arrival at the scene which was located in a woods road near the town of Buchans Junction, Mark HARSHBARGER was found deceased. Mary Beth HARSHBARGER was interviewed and said that she along with her husband, two young children and guide Lambert GREEN had been hunting. Her husband accompanied by Lambert GREEN walked into the bush to look for moose. She stayed with the truck and her children. Lighting conditions at the time were low as it was near dusk. Mary Beth HARSHBARGER then said she saw what she believed to be a bear and fired a shot from her rifle. She heard a cry and was then told by GREEN that she had fatally shot her husband.

5. A comprehensive investigation has been completed since the initial incident. The investigation took some time in that assistance was required from police agencies in the United States and travel of RCMP investigators to the United States to conduct necessary inquiries. I believe that the evidence gathered supports the charges filed.

6. On April 30, 2008, I swore an information charging Mary Beth HARSHBARGER with Criminal Negligence Causing Death contrary to Section 220(a) of the Criminal Code of Canada and Careless Use of a Firearm contrary to Section 86(1) of the Criminal Code of Canada.

7. As charges have been filed, a warrant of arrest is being sought for Mary Beth HARSHBARGER . As Mary Beth HARSHBARGER is living in the United States, the necessary process to attempt to have her returned to Canada is by way of an extradition procedure. I have conferred with Steve DAWSON, crown attorney employed with the Newfoundland and Labrador Department of Justice. Mr DAWSON has reviewed this file and has advised me that in order to commence extradition, a warrant of arrest is required.

**SWORN TO at** Grand Falls-Windsor in the
Province of Newfoundland and Labrador on this
30th day of April, 2008.

D. Antle, JP.                                   Cst. Doug HEWITT

CANADA
**PROVINCE OF NEWFOUNDLAND**
**AND LABRADOR**

**IN THE MATTER OF EXTRADITION**
**FROM THE UNITED STATES OF AMERICA**
**TO CANADA OF MARY BETH HARSHBARGER**
**WHO STANDS CHARGED WITH CRIMINAL**
**NEGLIGENCE CAUSING DEATH AND CARELESS**
**USE OF A FIREARM**

## AFFIDAVIT OF CONSTABLE DOUGLAS HEWITT

I, Cst. Douglas Hewitt, of Grand Falls-Windsor, Newfoundland and Labrador make oath and say as follows,

1.   That I have been a police officer and a member of the Royal Canadian Mounted Police (hereinafter referred to as RCMP) since 2000.

2.   That I am presently stationed at the Grand Falls-Windsor Detachment working with the General Investigation Section.

3.   That I am the primary investigator in the death of Mark Brian HARSHBARGER.

4.   That I have reviewed the investigative reports of all police officers involved in the investigation.

5.   That on September 14, 2006, Grand Falls-Windsor RCMPolice received a call that a hunter had fatally shot her husband while hunting.

6.   That at 2202 hrs, Cpl. Richer FRANCOEUR and Cst. Doug MESHER arrived at the scene which was located 9.2 kilometers in a woods road near the town of Buchans Junction. Mark HARSHBARGER was found deceased on a cut over in amongst tall grass. A bullet hole was present in the upper portion of his abdomen.



7.   That Lambert GREENE, the hunting guide that was present with the party told Cpl. FRANCOER that he along with Mark and Mary Beth HARSHBARGER and their two children had been hunting moose and black bear. GREENE and Mark HARSHBARGER walked across a cut over to look for moose. Mary Beth HARSHBARGER, her four year old daughter Myra and six month old son Elija James stayed with the truck. Mary Beth HARSHBARGER had her rifle and was hunting black bear and moose.

8.   That Lambert GREENE told Cpl. FRANCOEUR that he and Mark HARSHBARGER were returning to the truck and that he decided to stop and urinate. Mark HARSHBARGER continued to walk in front of him. All of a sudden he heard a scream and ran up to where he had heard it. He found Mark HARSHBARGER laying face down in a trench. GREENE checked for a pulse and could not find one. He believed Mark HARSHBARGER to be dead. GREENE asked Mary Beth HARSHBARGER if she had fired a shot and she said "yes". He then asked her what she had shot at and she replied that she had shot at a bear. GREENE walked to the truck and told Mary Beth HARSHBARGER that she had shot her husband. The remainder of the party returned to the hunting lodge stopping to pick up Barry HARSHBARGER along the way.

9.   That on September 15, 2006, Mary Beth HARSHBARGER provided a statement to Cpl. Phil MATTHEWS and Cst Wayne RUSSELL of the RCMP Gander Major Crime Unit. She said that she along with her husband Mark HARSHBARGER , their two young children Myra and Elijah James, and Mark HARSHBARGER's brother Barry HARSHBARGER had traveled from Pennsylvania, United States of America to Newfoundland to hunt moose, caribou and bear.

   i.)   They had arrived at the Moosehead Hunting Lodge on September 11/2006 and were planning on leaving to return home on September 18/2006.

   ii.)   During the week Lambert GREENE had been their designated hunting guide. The usual routine was to leave the hunting lodge and travel the remote woods roads hunting. The children would go with them and Mark would stand in the rear of the truck. They would often stop the truck and GREENE and Mark HARSHBARGER would walk in the bush to hunt and Mary Beth HARSHBARGER and the kids would await their return.

   iii.)   On the morning of September 16/2006, she had been hunting with Reginald WHITE with out her husband and the children and that she shot a caribou.

   iii.)   On the evening of her husband's death, the hunting party traveled the woods road as they usually did. Barry HARSHBARGER was dropped off at a tree stand to hunt bear, and they continued in the road to hunt. Her husband and GREENE left the truck on a couple of occasions while she remained in the truck with the children. When they arrived at the cut-over where the incident occurred, her husband Mark HARSHBARGER and Lambert GREENE walked in the bush to



hunt for moose. She was left with the two kids. She climbed in the back of the truck with her rifle.

iv.)   When her husband and GREENE walked into the bush she had lost sight of them and wasn't really paying attention to them as she was pre-occupied with the children. She looked around and saw a bear come out of the bush, walk along the edge and go back in the bush. She described it as a big black thing. She had at first seen the bear with her naked eye and then looked at it through the scope. She observed the bear for several minutes noting it to be low to the ground and rounded. Mary Beth HARSHBARGER estimated the bear to be approximately fifty yards from her. When she fired the shot she heard a horrible cry. GREENE then came from the bush and told her that her husband was dead. They immediately returned to the lodge, stopping along the way to pick up Barry HARSHBARGER..

v.)    She stated that it was probably too dark and that she should not have fired the shot.

vi.)   That Mark HARSHBARGER had shot a black bear earlier in the week.

10.    That on 2006-09-15, Corporal Donald EADY of the RCMP Forensic Identification Section examined the scene. Cpl. EADY noted that the deceased, Mark HARSHBARGER was laying on his back with a 30-06 caliber rifle at his side. The deceased was wearing a navy blue sweat shirt and bibbed blue jeans. A bullet entry wound was located in the front portion of the body, center of mass just below the sternum. The distance from the deceased to where Mary Beth HARSHBARGER had fired the shot was approximately 62.7 meters or 206 feet. The vegetation around the body consisted of reed type grass. The grass ranged in height from four feet, twenty feet in front of the body to four foot nine inches, ten feet in front of the body, to five feet surrounding the body. Direction of the shot fired was Southwest to Northeast.

11.    That on 2006-09-15, Cst. Wayne RUSSELL examined the firearm that was laying on the ground next to Mark HARSHBARGER. He noted that the firearm was a Remington Model 7600, 30-06 pump action rifle. There was a magazine attached to the rifle that contained four bullets. Cst. RUSSELL looked in the chamber of the rifle and noted that there was no bullet.

12.    That on 2006-09-15, I examined the scene noting the footsteps of Mark HARSHBARGER and Lambert GREENE in the mud. I did not see any footprints that resembled that of a black bear or any other type of animal.



13.   That on 2006-09-15, I obtained a written statement from Hayward WHITE. WHITE
stated that he is employed as a Conservation Officer with the Newfoundland and
Labrador Department of Wildlife. That on the previous evening Reg WHITE and
Lambert GREENE arrived at his residence just before 09:00 P.M.. He was told that Mary
Beth HARSHBARGER had shot her husband dead as she mistook him to be a bear.
WHITE said he then called police. He then traveled to Moosehead Lodge and watched
Mary Beth HARSHBARGER's rifle until police arrived. That he had checked the
hunting party earlier in the week and noted that Mark HARSHBARGER was stood in the
back of GREENE's truck and that he was not wearing blaze orange clothing.

14.   That on 2006-09-15, I obtained a statement from Steven MULROONEY.
MULROONEY was the cook employed at Moosehead Lodge. He said that it was at
08:27 P.M. that Reg WHITE came into the lodge and said that Mary Beth
HARSHBARGER had shot her husband. MULROONEY said he is certain of the time as
had looked at the clock that was located on the wall just after Reg WHITE had told him
of the incident. Mary Beth HARSHBARGER told MULROONEY that she looked twice,
that she was sure it was a bear and fired. She said that she saw the bear at the edge of the
woods and that the bear then came out. Mary Beth HARSHBARGER said that she never
did see her husband or his blue clothing. She told him that all she saw was the black of
the bear.

15.   That on 2006-09-16, I spoke with Lambert GREENE at Moosehead Lodge. GREENE
said that the previous evening he had stood outside as it was getting dark. He noted that
the weather conditions had been similar to the evening of the shooting. He noted that at
approximately five to ten minutes before eight o'clock that the lighting conditions were
the same as when Mark HARSHBARGER was shot. GREENE said he was quite certain
of this estimate of the time and lighting conditions.

16.   That on 2006-09-16, a scene re-enactment was completed at the location where Mark
HARSHBARGER was killed. Myself, Lambert GREENE, Ann WHITE, Reginald
WHITE, Cpl. Rus. THIBAULT, and Cpl. Donald EADY were present at the scene.
GREENE's truck, which was the same truck from which Mary Beth HARSHBARGER
had fired the shot, was placed in the same position as the evening of the shooting.
GREENE stated that weather and sky conditions were very similar to the evening of Mark
HARSHBARGER's death. GREENE gave me his watch so that he would not be able to
refer to it and thus he would have to give a time estimate from actual lighting conditions.
He walked in over the cut-over and stood where he had been when he had heard the shot.
Cpl. THIBAULT assumed the role of Mark HARSHBARGER as he was the same size
and height. Wearing dark clothing, he retraced the foot steps of Mark HARSHBARGER
that could still be seen in the mud and grass.

(i)   During the re-enactment I noted that the cut over was at the bottom of a
hill and was surrounded by coniferous trees. There were clumps of twelve
to fourteen foot brush on the cut over but it was mostly made up of grassy



vegetation and alders. It could be seen in the mud and grass where Mark HARSHBARGER and Lambert GREENE had walked. The long grassy vegetation resembled a reed type plant. It was tall and would have shoulder height to the victim. The grass was deceiving as from the truck it appeared that this grass was knee high. The area had been logged in the past and large tire ruts from logging equipment extended up through the middle. Mark HARSHBARGER would have used the right tire track (looking towards the truck) to walk. This area was wet and boggy and a person would have to be careful when stepping. At times the water nearly extended over the height of my rubber boots. A person would have to look down to navigate a path through the trail. Mark HARSHBARGER walked straight up from the edge of the woods and then turned to walk left (looking towards the truck) to avoid water and he then continued to walk between the two tire tracks. With the vegetation up to just below his shoulders, Mark HARSHBARGER, would have been bobbing up and down as he walked. The grass in the area had been trampled down due to examination and recovery of the body from the scene. I noted that given the position of the setting sun, (opposite to the direction of travel of Mark HARSHBARGER) that looking into the cut-over was very dark, yet looking from the cut-over towards the truck there was much more light.

(ii)    That on 2006-09-16 at 1955 hrs, Lambert GREENE stated that the present lighting conditions were the same as the evening of Mark HARSHBARGER's death. Cpl. THIBAULT who had been waiting at the inside of the cut-over retraced Mark HARSHBARGER's foot steps to where he died. I noted that it was very near dark. With the naked eye, I could see that something black was moving from the back of the cut-over towards the high grass. At this point I could not identify the black mass that could be seen moving up and down and zig zagging back and forth. I used the same rifle and scope as had been used by Mary Beth HARSHBARGER. Looking through the scope from the back of GREENE's truck, I could not identify the black mass. When Cpl. THIBAULT's head lifted I could see a cream colored patch. I could not see that it was actually his face. With the head in the downward position I could only see an unidentifiable black mass. I thought it plausible that Mary Beth HARSHBARGER may have felt that she was shooting at a bear. In my opinion, the lighting conditions were too dark to have fired a shot.

(iii)    That I spoke with Cpl. Rus THIBAULT following the re-enactment and he provided me with his observations. He said that when GREENE indicated that the light conditions were as they had been when the shooting took place, that he walked along the route taken by Mark HARSHBARGER to the location of his death. That he followed the same path taken by Mark HARSHBARGER (as identified by boot prints and broken grass). Due to old tree farmer ruts filled with water, he was forced to take slow deliberate



steps to avoid falling into these ruts, and often had to look downwards and change his direction of travel. That he was wearing similar color clothing (navy pants and jacket) in an attempt to re-create conditions as near as possible. Cpl. Don EADY and Cst. Doug HEWITT viewed him through rifle scope. Once completed, he changed places with Cst. HEWITT. He then viewed Cst. HEWITT through the scope approx. one minute later. In examining the scene under these conditions he could not clearly identify Cst. HEWITT as a person when viewing with the naked eye. Even when looking through the scope, writer could not make out any facial features and without prior knowledge would not be able to say for certain that a human being was being viewed. Given the height of the grass and shrubs, all that could be seen at best from just below the chest upwards. With the low light conditions as they existed in this exercise, he felt that it is quite plausible that Mary Beth HARSHBARGER felt she was looking at a bear. Based on his observations and years of hunting experience, under the conditions as presented during this exercise, that he would not have taken a shot as it was just too dark to do so.

(iv)    That I spoke with Cpl. Don EADY following the re-enactment and he provided me with his observations. That he watched Cpl Rus THIBAULT walk into the area where the deceased was found He noted that Cpl. THIBAULT was wearing clothing similar in color to what the deceased had been wearing. From the back of the pickup it was very difficult to make out Cpl THIBAULT. The appearance that he saw was a dark mass moving slowly in the tall grass and vegetation. That even when looking through the scope of the rifle used in the incident, all that he could see was a dark mass.

17.    That on 2006-09-16 at 2130 hrs, I spoke with the medical examiner Dr. DENNICK and advised him of the results of the re-enactment. DR. DENNICK said that the autopsy found that Mark HARSHBARGER had been bent over when he was shot given the angle of the bullet entering into the body. This fact corresponded to findings of the re-enactment were that it had been near dark at the time of the shooting, meaning that Mark HARSHBARGER would have had to have been looking down to the ground to find his way through the wet marsh and grass.

18.    That on 2006-09-16, Cpl. Don EADY traveled the gravel road from the scene to the Buchans Highway. He stated that was driving at a fast pace, comparable to what he how he felt Lambert GREENE would have been driving, and that the total time of travel was eleven minutes and that the distance was 8.12 kilometers.



19.     That on September 17, 2006, I constructed a time-line based on the information that had been received. Lambert GREENE stated that the shooting took place at approximately 1955 hrs. I estimate that ten minutes later at 2005 hrs he along with Mary Beth HARSHBARGER and the children left the scene. Given the information provided by Cpl. EADY of the travel time of eleven minutes, I estimate the travel time from the scene to the lodge to be approximately twenty minutes, including stopping to pick up Barry HARSHBARGER. That would put the hunting party at the hunting lodge at approximately 2025 hrs. This appears to match the time frame in that Steve MULROONEY said he looked at the clock and that time was 2027 hrs when Reg WHITE came inside the lodge and advised of the incident. These facts support Lambert GREENE's estimate of the time of the shooting to be at 1955 hrs.

20.     That on July 2, 2008, I spoke with Herb THOMS, who is employed at the Environment Canada Weather Office in Gander, NL. THOMS provided me with an internet website sponsored by the National Research Counsel where I could research historical sunset data. Utilizing the known global positioning coordinates of the scene, I was informed that the sun had set at 1931 hrs at the scene on September 14, 2006.

21.     That on September 13, 2007. A second re-enactment was conducted at the scene. The findings were similar to that of the first re-enactment. Police officers involved were of the opinion that a shot from a firearm should not be fired in such low light conditions

22.     That on April 30, 2008, I swore an information before Justice of the Peace Donna ANTLE, charging Mary Beth HARSHBARGER with;

-Criminal Negligence Causing Death    Section 220(a) Criminal Code of Canada

-Careless Use of a Firearm              Section 86(3)(a) Criminal Code of Canada

Justice of the Peace Pamela ARNOLD issued a warrant of arrest for Mary Beth HARSHBARGER.

23.     That I sought and received the confirmation from the Crown Attorney's Office that it is their intention to request the extradition of Mary Beth HARSHBARGER to this jurisdiction to face the aforementioned charges.



24.     That on June 20, 2008,  I spoke with Detective David IDE of the Wyoming
        County, Pennsylvania, District Attorney's Office who confirmed  that Mary Beth
        HARSHBARGER continues to reside at RR3, Box 331, Meshoppen,
        Pennsylvania, United States of America.


That between the dates of September 14, 2006 and July 11, 2007, Lambert GREENE provided
witness statements to several police officers including myself.  In these statements, GREENE
outlined the details of what happened during the death of Mark HARSHBARGER.  These details
are outlined in his Affidavit.


I make this Affidavit in support of a request for the extradition from the United States of
America to Canada of Mary Beth HARSHBARGER on the charges of Criminal Negligence
Causing Death and Careless Use of Firearm.


SWORN TO AT Grand Falls-Windsor
in the Province of Newfoundland and
Labrador, on this 25th day of
July, A.D., 2008.


_____

**JOCELYN C. GREENWOOD**
A Commissioner for Oaths in and for
the Province of Newfoundland and Labrador.
My commission expires on December 31, 2012.

**CANADA**
**PROVINCE OF NEWFOUNDLAND**
**AND LABRADOR**

**IN THE MATTER OF EXTRADITION**
**FROM THE UNITED STATES OF AMERICA**
**TO CANADA OF MARY BETH HARSHBARGER**
**WHO STANDS CHARGED WITH CRIMINAL**
**NEGLIGENCE CAUSING DEATH AND CARELESS**
**USE OF A FIREARM**


## <u>AFFIDAVIT OF LAMBERT GREENE</u>


I, Lambert GREENE , of Tilting, Newfoundland and Labrador make oath and say as follows;

1.     I was born July 5, 1949 at Fogo, in the Province of Newfoundland and Labrador, Canada.

2.     On September 14, 2006, I was employed as a hunting guide with Moosehead Lodge, located near Buchans Junction, Newfoundland and Labrador, Canada. I was assigned to the Mary Beth and Mark HARSHBARGER hunting party.

3.     On September 14, 2006, I was accompanied in my truck by Mark HARSHBARGER, and his wife Mary Beth HARSHBARGER. The HARSHBARGER's children Myra and Elijah were present as well as Mark HARSHBARGER's brother, Barry HARSHBARGER.

4.     I was guiding the hunting party on a woods road located near the Moosehead Hunting Lodge. Barry HARSHBARGER was dropped off at a bear stand area. The remainder of the party continued in the woods road. I stopped the truck off at a side road and myself and Mark HARSHBARGER walked in an old skidder road. Mary Beth HARSHBARGER and her two children remained with the truck. Myself and Mark HARSHBARGER walked to a hill and we soon after returned to the truck.

5.  The hunting party returned to the truck and we continued to hunt as we traveled the dirt road. We turned off as a side road and stopped at the end. Mary Beth HARSHBARGER and her two children remained with the truck. Myself and Mark HARSHBARGER walked across a cut-over and up a hill away from the view of Mary Beth HARSHBARGER.

6.  The understanding amongst the party was that Mary Beth HARSHBARGER was to stay with the truck and if a moose or bear presented itself that she was to shoot it.

7.  As it was getting dark, myself and Mark HARSHBARGER decided to walk back to the truck. We walked the same route back to the truck as we taken to get to the hill. Just before getting back to the truck, I decided to stop and urinate as Mark HARSHBARGER continued to walk. I suddenly heard a rifle shot that followed by a scream. I walked up to where I had heard the scream and found Mark HARSHBARGER laying in a watery ditch. I pulled him out to examine his vitals and could not find a pulse.

8.  I called out to Mary Beth HARSHBARGER and asked if she had fired her rifle. She responded that she had fired her rifle at a bear. Realizing that Mark HARSHBARGER was dead, I walked back to the truck. I told Mary Beth HARSHBARGER that her husband was dead. Mary Beth HARSHBARGER and her daughter became upset and I consoled them. I heard Mary Beth HARSHBARGER say, "Oh, I shot Mark, I shot my husband, I shot my love". I took Mary Beth HARSHBARGER's rifle and placed it in the rear of the truck. We left in the truck to return to the hunting lodge to call the police.

9.  We stopped and picked up Barry HARSHBARGER at the tree stand. I returned with the party to the hunting lodge where I advised the owner Reginald WHITE of the death. Myself and Reginald WHITE advised the local wildlife officer of the incident. The officer called the police.

10.  On September 16, 2006 and September 13, 2007, I was involved with police in re-enactments of the events that lead to the death of Mark HARSHBARGER. That during the re-enactments, I stood at the scene and to the best of my ability indicated to police officers the lighting conditions that were present at the time of the death of Mark HARSHBARGER.

11.  On September 14, 2006, I provided a statement to Cpl. Richer FRANCOEUR of the Royal Canadian Mounted Police.

12.  On September 15, 2006, I provided a statement to Cpl. Phil MATTHEWS of the Royal Canadian Mounted Police.

13.  On July 11, 2007, I provided a statement to Cst. Doug HEWITT of the Royal Canadian Mounted Police.

14.   On July 24, 2008, I identified a photograph of Mary Beth HARSHBARGER that had been shown to me by Cst. Doug HEWITT, and which is annexed to my affidavit as "Exhibit A".

**SWORN TO** at _____Gander_____, in the
Province of Newfoundland and Labrador,
this ___24th___ day of July, A.D., 2008,
before me;

_____
Commissioner of Oaths

    **CAROL REIDPATH**
A Commissioner for Oaths in and
for the Province of Newfoundland
and Labrador. My commission
expires on December 31, 2012.

_____
Lambert GREENE

# "EXHIBIT A"

