UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| VS. | : | JUDGE MANNION |
| | : | |
| IN THE MATTER OF EXTRADITION | : | |
| MARY BETH HARSHBARGER, | : | |
| | : | |
| DEFENDANT | : | 5:08-MJ-109 |

*************************************************************************************

BRIEF SUBMITTED ON BEHALF OF THE
DEFENDANT, MARY BETH HARSHBARGER

I.  PROCEDURAL HISTORY:

The United States filed an ex-parte complaint seeking, on behalf of the Government of Canada, the extradition of Mary Beth Harshbarger for crimes committed in the Canadian Province of Newfoundland and Labrador. In said complaint it is alleged that on or about September 14, 2006, near the town of Buchans Junction, Defendant did unlawfully shoot and kill her husband, Mark Harshbarger in violation of the Criminal Code of Canada, §219(1) and 220 (relating to Criminal Negligence Causing Death) and §86(1) and 86(3)(a)(relating to Careless Use of a Firearm), indictable offenses under Canadian Law.  A warrant for the arrest of Mary Beth Harshbarger was issued on or about April 30, 2008 by Justice of Peace Pamela Arnold at Grand Falls-Windsor, Newfoundland and Labrador.

In addition to the Complaint, the United States Government also filed:

1.  A Request for Extradition;

    2.    A Declaration of Susan Torres, an Attorney\Advisor in the Office of the Legal Advisor, United States Department of State, with the diplomatic note of the Canadian Government to the State Department requesting extradition, and copies of the treaties and protocols governing United States-Canadian Extradition;

    3.    The Affidavit of Steven Dawson, the Senior Crown Attorney (acting) at the Special Prosecutions Office in the Provincial Department of Justice, a Criminal Information supported by an Affidavit by Constable Doug Hewitt, a warrant of arrest signed by Canadian Justice of the Peace Pamela Arnold, the Affidavit of Constable Douglas Hewitt, the Affidavit of Lambert Greene, and a picture of the accused.

A decision on the Government's request for an arrest warrant pursuant to Title 18, United States Code §3184 for the arrest of Mary Beth Harshbarger was issued by this Honorable Court on or about January 6, 2009. In its Decision & Order, this Court directed that a Summons and not an Arrest Warrant issue directing Mary Beth Harshbarger to attend a hearing on Motions for Bail and for the scheduling of an evidentiary hearing as called for by 18 USC §3184. A bail hearing was conducted on January 16, 2009 at which time Defendant was released on her own recognizance. This brief is submitted in anticipation of the evidentiary hearing scheduled for February 13, 2009.

    II.    <u>STATEMENT OF THE CASE</u>:

The Defendant, Mary Beth Harshbarger, accompanied by her husband, Mark Harshbarger, their two children, Myra (age 4) and Elijah James (age 6 months), together with Mark's brother, Barry Harshbarger, traveled from Pennsylvania to the Moosehead Hunting Lodge near Buchans Junction, Newfoundland for the purpose of hunting moose, caribou and bear. (Hewitt Aff. ¶ 9) The family had planned a one week hunting trip anticipating a return home on September 18, 2006.

Lambert Greene was employed by the party as their hunting guide. The usual routine called for Defendant, her husband and children to leave the hunting lodge with Greene and travel down remote woods road to hunt. They would often stop the vehicle with Greene and Mark Harshbarger walking into the brush, leaving the Defendant and her children at the vehicle. (Hewitt Aff. ¶ 9(ii)) On September 14, 2006, Defendant, her family and her brother in law, Barry, together with Lambert Greene traveled on Woods Road located near the Moosehead Hunting Lodge. Barry was dropped off at a bear stand and the remainder of the party continued down Woods Road. (Greene Aff.¶ 4) The vehicle stopped on at least one occasion allowing Greene and Mark Harshbarger to

walk down an old skidder road into the wooded area to hunt. Upon their return to the vehicle, the party proceeded down a side road where Greene and Mark Harshbarger again exited the vehicle and walked into a "cut over" and up a hill away from the vehicle. There was an understanding amongst the hunting party that Mary Beth would stay with the truck and if a moose or bear presented itself she would shoot it. (Greene Aff. ¶ 6) Walking the same route back to the truck as they had taken to get to the hill, Greene stopped to urinate as Mark Harshbarger continued to walk. Greene heard a rifle shot followed by a scream and soon thereafter found Mark Harshbarger laying in a watery ditch. The Defendant admitted she had fired her rifle, stating that she had shot at a bear. (Greene Aff. ¶ 7-8) In their investigation, law enforcement obtained a statement from the Defendant wherein she indicated that when her husband and Greene walked into the bush, she had lost sight of them. She saw a bear coming out of the bush walking along the edge and returning to the bush. She observed the bear with her naked eye and then looked at it through a rifle scope observing the bear for

several minutes, noting it to be low to the ground and rounded. When she fired the shot she heard, what she described as a "horrible cry". It was then that Greene emerged from the bush and told her that she had shot her husband.  (Hewitt Aff. ¶ 9(iv)) A Forensic Identification Officer for the Royal Canadian Mounted Police examined the scene on September 15, 2006 and found that the decedent was  wearing a navy blue sweatshirt and blue jeans. (Hewitt Aff. ¶ 10) An interview conducted by law enforcement with Hayward White, Conservation Officer, with Newfoundland and Labrador Department of Wildlife, confirmed that during the week, Mark Harshbarger had been observed hunting without wearing blaze orange clothing. (Hewitt Aff. ¶ 13)

     Constable Hewitt established a time line of events based upon interviews he conducted of the Defendant and witnesses. He estimated that the fatal shot was fired at approximately 7:55 p.m.  Constable Hewitt's inquiry with the Environmental Canada Weather Office  revealed that the sun set at 7:31 p.m. on September 14, 2006. (Hewitt Aff. ¶ 19-20) Under applicable regulations, hunting is to cease 30 minutes after sundown.  Law enforcement conducted two re-enactments.  The first was conducted on September 16, 2006, with the second conducted on September 13, 2007. Utilizing Defendant's own firearm and scope, Constable Hewitt thought it "plausible that Mary Beth Harshbarger, may have felt that she was shooting at a bear. (Hewitt Aff. ¶ 16(ii)) Contributing to this misperception was the topography and ground vegetation. A cut over was located at the bottom of a hill surrounded by coniferous trees. Long grassy vegetation resembling reed type plants growing shoulder height to the victim surrounded the area where the decedent was found. The grass was described by Hewitt as deceiving, as from the truck it appeared that the grass would have been knee

high to an adult. Large tire ruts from logging equipment combined with wet and boggy soil would have caused the decedent to walk with an altered gait resulting in him bobbing up and down as he walked. Absent florescent orange clothing, the decedent would have appeared as a black mass. (Hewitt Aff.¶ 16(ii)(iii) The results of an autopsy determined, given the angle of the bullet entering the body that the decedent, would have been looking down to the ground at the time of the shooting. As a consequence, his face would not have been exposed to Defendant at the time she fired the shot. (Hewitt Aff. ¶ 17)

On April 30, 2008, 19 months after the tragic death of her husband, Defendant was charged in a two count indictment with Criminal Negligence Causing The Death of Mark Ryan Harshbarger in violation of §220(a) of the Criminal Code of Canada and Careless Use of a Firearm in violation of §86(1) of the Criminal Code of Canada.

III.   ISSUES:

1.   Are the offenses for which extradition is sought in the instant case extraditable pursuant to the "Duel Criminality" requirement of the Treaty on Extradition, DEC.3, 1971, U.S. - Canada, T.I.A.S. No.: 8237 (an amended by protocols of 1988 and 2001)?

    (a)   In applying the "Duel Criminality Provisions", what domestic law applies?

2.   Is the evidence presented in the instant case sufficient to establish probable cause for a prima facie case under both Canadian Law and comparable criminal provisions of domestic law?

IV.    ARGUMENT:

        IN APPLYING THE DOCTRINE OF
"DUAL CRIMINALITY", FEDERAL LAW
IS TO BE APPLIED AND, IF NONE, THAN
THE LAWS OF THE COMMONWEALTH OF
PENNSYLVANIA.

The Defendant, Mary Beth Harshbarger, has been charged with two criminal counts by Information filed on April 30, 2008. The first count alleges that on or about the 14th day of September, 2006, at or near Buchans Junction in the province of Newfoundland and Labrador she did by criminal negligence cause the death of Mark Ryan Harshbarger contrary to §220(a) of the Criminal Code of Canada. Count II alleges that on the same date and place Defendant did, without lawful excuse, use a firearm, to wit a Remington Rifle, without reasonable precautions for the safety of other persons contrary to §86(1) of the Criminal Code of Canada, punishable by §86(3)(a) of the Criminal Code of Canada. §220 of the Criminal Code of Canada provides as follows:

> Causing death by criminal negligence - every person, who by criminal negligence causes death to another person is guilty of an indictable offense and liable, (a) where a firearm is used in the commission of the offense, to imprisonment for life and to a minimum punishment of imprisonment for a term of four years; and (b) in other case, to imprisonment for life.

Criminal Negligence is defined by §219(1) of the Criminal Code of Canada to require a showing of wanton or reckless disregard for the lives or safety of others.

The charge of Careless Use of a Firearm is defined in §86(1) of the Criminal Code of Canada and requires a showing that the offender, without lawful

excuse employed a firearm in a careless manner or without reasonable precautions for the safety of other persons. The applicable punishment for a conviction provides for a term of not more than two years in the case of a first offense. Article I of the First Protocol to the Treaty on Extradition, Dec. 3, 1971, U.S. - Canada T.I.A.S. No. 8237 (as amended by Protocols of 1988 and 2001) provides for extradition under the "Duel Criminality Standard". "Extradition shall be granted for conduct which constitutes an offense punishable by the laws of both the contracting parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment." First Protocol, Art. I.

In applying the "Dual Criminality Doctrine" to the facts in the instant case, the court must initially determine which domestic law applies. As Article I of the First Protocol refers to "the laws of both contracting parties", the courts have looked to the proscription by similar criminal provisions of Federal Law or, if none, the law of the place where the fugitive is found, or if none, the law of the preponderance of the states. Cucuzzella vs. Kelikoa, 638 F.2d 105, (9th Cir, 1981); In The Matter Of The Extradition of Schweidenbach, 3 F.Sup. 2d 118 (US DC MA 1998). In applying the Dual Criminality Doctrine:

> The law does not require that the name by which the crime is described in the countries shall be the same; nor that the scope of the liability shall be co-extensive, or, in other respects, the same in two countries. It is enough if the particular acts charged is criminal in both jurisdictions. Collins vs. Loisel, 259 U.S. 309, 312, 42 S. Ct. 469, 66 L.Ed 956 (1922).

In the case at bar, the charge of Criminal Negligence Causing Death under

§220 of the Criminal Code of Canada requires a showing of a homicide proximately caused by the criminal negligence of the Defendant, i.e. a showing that the Defendant's act of firing her weapon evidenced a wanton or reckless disregard for the life or safety of her husband. Title 18 USC §1112(a) defines Manslaughter as the unlawful killing of a human being without malice. The section further identifies two types of Manslaughter, Voluntary Manslaughter and Involuntary Manslaughter. Involuntary Manslaughter proscribes the unlawful killing of a human being without malice in the commission of an unlawful act, not amounting to a felony or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death. 18 USC §1112(a). To sustain an Involuntary Manslaughter charge there must be a showing that the Defendant (1) acted with gross negligence, meaning a wanton or reckless disregard for human life and (2) have knowledge that his or her conduct was a threat to the life of another or knowledge of such circumstances as could reasonably have enabled the Defendant to foresee the peril to which his or her act might subject another. U.S. vs.Fesler, 781 F.2d 384 (5th Cir. 1986), citing: United States vs. Tresvant, 677 F.2d 1018, 1023 (4th Cir. 1982); United States vs. Schmidt, 626 F.2d 616, 617 (8th Cir.), cert. denied, 449 U.S. 904, 101 S. Ct. 278, 66 L.Ed 2.d 136 (1980). Title 18 USC §1112(a) provides for imprisonment of not more than eight years.

As to the charge of Careless Use of a Firearm, §86(1) & §86(3)(a) of the Criminal Code of Canada, the Defendant cannot find any comparable proscription in federal law. Title 18 USC §13, as well as prevailing case law regarding extradition requires us to examine the laws of the place where Mary Beth Harshbarger

was found to determine whether the Dual Criminality Provisions may be satisfied. <u>Yau-Leung vs. Soscia</u>, 649 F.2d 914, 918(2 Cir. 1981), citing: <u>Wright vs. Henkel</u>, 190 U.S. 40, 58, 23 S. Ct. 781, 785, 47 L.Ed 948 (1903) The Game & Wildlife Code of the Commonwealth of Pennsylvania does proscribe the killing of any human being through the use of a firearm while hunting. Title 34 Pa. C. S. §2522(a), makes it unlawful for any person while hunting through carelessness or negligence to shoot at, injure or kill another and grades the offense a misdemeanor of the first degree. 34 Pa. CS §2522(a)(b)(3). While the Game & Wildlife Code does not define the terms carelessness or negligence, 18 Pa. C.S. §302(b)(4) states:

> A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exist or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.  18 Pa. C.S. Section 302(b)(4).

§302 of the Crimes Code further specifies that a person cannot be found guilty of an offense unless he acts intentionally, knowingly, recklessly or negligently, as the law may require with respect to each material element of the offense. 18 Pa. C.S.  §302(a). A misdemeanor of the first degree is punishable by up to five years incarceration. 18 Pa. C.S.A. 106(b)(6).

THE FACTS IN THE INSTANT CASE
FAIL TO ESTABLISH A PRIMA FACIE
CASE AS TO EITHER INVOLUNTARY
MANSLAUGHTER UNDER FEDERAL
LAW OR SHOOTING AT OR CAUSING

INJURY TO HUMAN BEINGS UNDER
THE GAME & WILDLIFE CODE OF
THE COMMONWEALTH OF PENNSYLVANIA.

Article 10(1) of the applicable treaty provides, " Extradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found...to justify his committal for trial, if the offense of which he is accused had been committed in its territory..." .  Treaty on Extradition, Dec. 3, 1971, U.S. - Canada  T.I.A.S.No. 8237(as amended by protocols of 1988 and 2001).  In The Matter of The United States of America Extradition of Alexander Winston Sylvester, 4:05-CR-0490(M.D. Pa. Feb. 14, 2006). Under Pennsylvania Law, the Government bears the burden of establishing at least a prima facie case that a crime has been committed and that the accused is probably the one who committed it. Commonwealth vs. McBride, 528 Pa. 153; 595 A.2d 589 (1991). To meet its burden, the government is required to present evidence with regard to each of the material elements of the charge and to establish sufficient  probable cause to warrant the belief that the accused committed the offense. Id., 158, Commonwealth vs. Wojdak, 502 Pa. 359, 466 A.2d 991 (1983). Included among those elements that the Government must establish is that the Statute of Limitations is not a bar to the prosecution for the offense charged. In The Matter Of The United States of America Extradition of Alexander Winston Sylvester, 4:CR05-0490(M.D. Pa. Feb. 14, 2006), Commonwealth vs. Bethlehem, 391 Pa. Super. 162, 172, 570 A.2d 563 (1989). A prima facie case must be established by competent evidence. The Pennsylvania Supreme Court has held that under Pennsylvania Law, the right to confront witnesses in all criminal  prosecutions extends to an adversarial

preliminary hearing. As a consequence, hearsay alone is insufficient to establish a prima facie case against an accused. Commonwealth of Pennsylvania xex rel. Buchanan vs. District Justice Verbonitz, 525 Pa. 413; 581 A.2d 172 (1990).

In the case at bar, the crime Involuntary Manslaughter, which corresponds to Criminal Negligence Causing Death under the Criminal Code of Canada requires a showing that the Defendant, in this case, while in the commission of a lawful act (hunting) did fire her weapon without due caution and circumspection thereby resulting in the death of her husband. Title 18 USC §1112(a), Involuntary Manslaughter requires a prima facie showing that the Defendant (1) acted in gross negligence, meaning a wanton or reckless disregard for human life, and (2) with knowledge that her conduct was a threat to the life of another or knowledge of such circumstances as could reasonably have enabled the Defendant to foresee the peril to which her act might subject another. U.S. vs. Fesler, 781 F.2d 384, 393(5th Cir. 1986). The court in U.S. vs. Pardee, 368 F.2d 368(4th Cir. 1966), cited with favor Maryland vs. Chapman, 101 F. Sup. 335, 340-341 (D.Md. 1951) which stated:

> ... the law is reasonably clear that a charge of Manslaughter by negligence is not made out by proof of ordinary simple negligence that would constitute civil liability. In other words, the amount or degree of character of the negligence to be proven in a criminal case is gross negligence, to be determined on the consideration of all the facts of a particular case...if the resulting deaths were merely accidental or the result of a misadventure or due to simple negligence, or an honest error of judgement in performing a lawful act, the existence of gross negligence should not be found. Id. 374, citing State of Maryland vs. Chapman, 101 F. Sup. 335, (D.Md. 1951)

A review of the documentary evidence presented in the instant case clearly shows that the acts of Mary Beth Harshbarger in firing the fatal shot constituted a mere accident amounted to at most, simple negligence. The thrust of the Government's contention that the Defendant's act was in wanton or reckless disregard for the life or safety of another appears to be that the shot was fired after sunset. It is important to note, however, that according to Canadian Law, hunting was permissible until 8:01 p.m. (Hewitt Aff. ¶ 20, Exhibit "A" attached)  As previously set forth in this brief, the topography, the vegetation at the scene of the shooting, the rutted and boggy soil conditions and the decedent's decision to forego orange hunting gear for dark clothing each contributed significantly to this tragic event. Two separate re-enactments by the Royal Canadian Mounted Police confirmed that the Defendant's belief that she was shooting a bear was plausible under the circumstances. Without more, Defendant contends that the government has failed to make a prima facie showing of gross negligence under the Federal Stature or wonton or reckless disregard for the lives or safety of others as required by Canadian law.

Likewise, Defendant contends that the government has failed to establish a prima facie showing that she "without lawful excuse used a firearm without reasonable precaution for the safety of other persons" as proscribed by §86(1) of the Criminal Code of Canada, nor was such a showing made as to the comparable provision under the Pennsylvania Game & Wildlife Code. Carelessness is not defined in the Game or Wildlife Code, nor in Pennsylvania's Crime Code. The term must be construed according to its common and approved usage pursuant to the Statutory Construction Act. 1 Pa. C.S. Section 1903. Careless has traditionally been defined as

"not taking ordinary or proper care", i.e., neglectful and inattentive. See <u>Tropeck vs. Commonwealth</u>, 847 A.2d 208 (Pa. Comm. Ct. 2004). The test for negligence under the Game Law requires a showing that the purported wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person resulting from his act. <u>Pa. Game Com. vs. Crane</u>, 6 Pa. D&C 2.d 129 (Crawford County, 1956). In the case at bar, there were a series of unfortunate, concurring events and conditions which led to the untimely death of Mr. Harshbarger. As the re-enactments conducted by law enforcement show, a hunter exercising reasonable and prudent caution could have, nonetheless reasonably believed he was firing at a bear under those circumstances and conditions in which Defendant found herself on December 14, 2006.

Defendant further argues that extradition on the charge of Careless Use of a Firearm is barred by the applicable Statute of Limitations. As noted by the <u>Sylvester</u> Court, the Pennsylvania Statute of Limitations is a necessary element of a prima facie case for extraditable crimes as the Pennsylvania Statute of Limitations is applicable pursuant to Article 10(a) of the Treaty. <u>In The Matter of The United States of America Extradition of Alexander Winston Sylvester</u>, No. 4:CR05-0490(Md., Pa. 2006). Title 42 Pa. C.S.A. §5552 establishes a two year Statute of Limitations applicable to the instant charge. Under Pennsylvania Law, commencement of a prosecution begins when an indictment is found or an information is issued or when a warrant, summons or citation is issued. 42 Pa. C.S.A. Section 5552(e). A summons was issued in the instant case on January 6, 2009, more than two years after the alleged criminal conduct. As such, Defendant cannot be extradited on said charges.

V.	CONCLUSION:

   Based upon the above arguments, the Defendant seeks this Court to deny extradition in the instant matter.

						RESPECTFULLY SUBMITTED:

					BY:	S/Paul P. Ackourey,Esq
,						PAUL P. ACKOUREY, ESQUIRE
						ATTORNEY FOR DEFENDANT
						116 NORTH WASHINGTON AVENUE
						FIRST FLOOR, STE. 1-E
						SCRANTON, PA 18503
						PA BAR#: 38506
						(570) 342-4242   FAX: (570) 342-8382
						lop45ackourey@epix.net